# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| FELICIA R. LANDRY | CIVIL ACTION 08-0388 |
| VERSUS | JUDGE DOHERTY |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE METHVIN |

*REPORT AND RECOMMENDATION*

Before the undersigned is an appeal of the Commissioner's finding of non-disability and cessation of disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED.**

*Background*

Felicia R. Landry was born on January 27, 1971, and was thirty-six years old on the date of the hearing before the Administrative Law Judge (ALJ). (Tr. 243). Landry began receiving child's disability benefits in 1979 due to mild mental retardation. On June 18, 2004, when she was thirty-three years old, it was determined that Landry was no longer disabled. Landry appealed, and the matter was set for an administrative hearing. Meanwhile, Landry filed another application for child's benefits, alleging disability since 1979. This claim was denied, and was consolidated with Landry's cessation adjudication for hearing.

At the first administrative hearing on May 8, 2007, the ALJ continued the case in order to allow Landry to obtain counsel. At the second hearing on October 7, 2007, Landry was still unrepresented. The hearing proceeded, and the ALJ issued a decision on October 25, 2007, finding that Landry's disability ended on June 1, 2004. (Tr. 12, 14, 17). The Appeals Council denied review and this appeal followed.

### *Assignment of Errors*

Landry argues that the ALJ failed to fully develop the record, a duty which is particularly important where a claimant is not represented by counsel. As a consequence, Landry contends the ALJ's decision is not supported by substantial evidence.

### *Standard of Review*

The court's review of the Commissioner's decision to terminate Social Security benefits is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

### *Applicable Law and Commissioner's Findings*

In termination cases, the Commissioner may discontinue Social Security benefits if substantial evidence demonstrates that: (1) there has been medical improvement related to an individual's ability to work and (2) the individual is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f); 20 C .F.R. § 404.1594(a). Medical improvement is defined as any

decrease in the medical severity of a claimant's impairment which was present at the time of the most recent favorable medical decision that the claimant was or continued to be disabled. 20 C.F.R. § 404.1594(b)(1). The second part of the evaluation process relates to the ability to engage in substantial gainful activity. In making this determination, the Commissioner unitizes the 8-step sequential analysis set forth in 20 C.F.R. § 404.1594(f), as follows:

1. is the claimant engaged in substantial gainful activity? (If so, the disability has ended).
2. if not, does the claimant have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1? (If so the disability is continuing).
3. if not, has there been medical improvement?
4. if there has been medical improvement, is it related to the claimant's ability do work?
5. if there has been no medical improvement, or if the medical improvement is not related to the claimant's ability to do work, is one of the exceptions to medical improvement applicable? (If not, the disability is continuing).
6. if there has been no medical improvement, or if the medical improvement is not related to the claimant's ability to do work, or if one of the first group of exceptions is applicable, is the combination of impairments severe? (If not, the disability has ended).
7. if so, is the claimant able to engage in past relevant work? (If so, the disability has ended).
8. if not, is the claimant able to perform other substantial gainful activity?

See also Griego v. Sullivan, 940 F.2d 942, 944 n. 1 (5th Cir.1991).

In his decision, the ALJ found at the first step that Landry had not engaged in any substantial gainful activity. At the second step, he found that Landry's medically determinable impairments of borderline intellectual functioning and deviation of the right eye did not meet or

equal in severity any listed impairment. At the third and fourth step, the ALJ determined that there had been medical improvement related to Landry's ability to work. Specifically, the ALJ found that on July 24, 1979, Landry was found disabled due to mild mental retardation, which met listing 12.05B of 20 CFR Part 404, Subpart P, but that as of June 1, 2004, she no longer had the requisite IQ scores to meet the previously met listing. Assessing Landry's residual functional capacity, the ALJ found that Landry could perform simple, unskilled work at all exertional levels. The ALJ concluded that the fifth and sixth steps did not apply. At the seventh step, the ALJ concluded that Landry had no past relevant work. At the eighth and final step, after hearing testimony by a vocational expert that Landry could perform the requirements of occupations such as food prep worker, janitor/cleaner and maid/housekeeper, the ALJ found that Landry had the capacity to make a successful adjustment to work that existed in significant numbers in the national economy, and thus was not under a disability as of June 1, 2004, to the date of the decision.

## *Discussion*

As noted above, the first hearing was postponed to allow Landry to obtain representation (R238). At the second hearing, before a second and different ALJ, Landry proceeded without representation (R242). The record shows the hearing lasted only 11 minutes, and included testimony of Landry, her mother, and Sandra Rickett, a vocational expert. A medical expert, Jimmie Cole, was also present at the hearing, and asked questions of Landry regarding chest pain he noted in her records. (Tr. 247). Claimant responded that she went to the doctor for her chest pain, and that "they called it a small heart attack." (Tr. 247). Landry was unable to give any

further details, except that the doctor had put her on medication for her heart, then stopped the medication, and that testing showed she was doing "okay." (Tr. 247).

The medical records show that claimant repeatedly complained of chest pain and shortness of breath. (Tr. 219, 229, ). Dr. Ross Klingsberg, M.D., who evaluated claimant for DDS, stated that "She does not appear to have been adequately worked up for this shortness of breath." (Tr. 221). Dr. Alfred Buxton, a DDS psychologist, also noted that "Medical follow-up care for her episodic chest pain would seem to be appropriate." (Tr. 231).

The medical expert did not question Landry about her deviated right eye, although the medical records show that she complained that she ran into things and injured herself because she could not see adequately. (Tr. 218, 221, 224).

Landry had I.Q. scores as follows: verbal - 73, performance - 69, and full-scale - 69. Appendix 1, 20 C.F.R., Part 404, § 12.05(C) provides the requirements for mental retardation as follows:

> *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ***
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and **a physical or other mental impairment imposing an additional and significant work-related limitation of function.** (Emphasis added).

The record contains a psychological evaluation by Dr. Sandra B. Durdin, Ph.D., a clinical psychologist which stated as follows:

> Her ability to sustain effort and persist at a normal pace over the course of a forty-hour workweek <u>is good in the absence of any serious physical or mental complaints</u>. (Tr.199) (Emphasis added).

The ALJ found that Landry had a severe impairments of both borderline intellectual functioning and deviation of the right eye. (Tr. 14). Further in his Decision, the ALJ recognized that "Dr. Briley diagnosed deviation of the right eye, slow learner, history of injury to the right hand and history of injury to the right small toe." (Tr.16). The ALJ also recorded claimant's I.Q. scores, as follows: "Intelligence testing yielded a full scale IQ of 69, a verbal IQ of 73 and a performance IQ of 69." (Tr. 16). However, the ALJ did not discuss or explain why Landry did not meet Listing 12.05, when he found her right eye deviation to be a severe impairment at the second step.

The ALJ owes a duty to the claimant "to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." <u>Brock v. Chater</u>, 84 F.3d 726, 728 (5th Cir.1986) (citing <u>Kane v. Heckler</u>, 731 F.2d 1216, 1219 (5th Cir.1984)). When a claimant is proceeding *pro se*, the ALJ owes a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." <u>Kane</u> at 1219-20 (citations and internal quotation marks omitted). The court must reverse an ALJ's decision as not supported by substantial evidence if the claimant shows (1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby. <u>Id</u>. at 1220. In order to show prejudice, the claimant must show that she "could and would have adduced evidence that

might have altered the result." Brock, 84 F.3d at 728-729 (5th Cir. 1996), citing Kane, 731 F.2d at 1220. *See also*, Gullett v. Chater, 973 F.Supp. 614, 621 (E.D. Texas 1997).

In the instant case, the record shows that the ALJ failed to fully develop the record. At a minimum, the ALJ should have had Landry examined by an appropriate medical professional to determine the functional impairments caused by her eye deviation, and further address her complaints of chest pain and shortness of breath. The ALJ's failure to do so prejudiced Landry, because if these two issues had been fully developed, they may well have been found to be "a physical ... impairment imposing an additional and significant work-related limitation of function," which in conjunction with her I.Q. scores, would have satisfied Listing 12.05. Alternatively, even if the Listing was not met, the claimant's residual functional capacity may well have been affected by the functional limitations, if any, caused by claimant's eye deviation, shortness of breath, and chest pain.

The record in this case was not adequately developed regarding the functional limitations arising from claimant's eye deviation, chest pain, and shortness of breath, and the failure to develop the record on these issues was prejudicial. The undersigned finds the ALJ failed in his special duty towards this unrepresented claimant, and Landry was prejudiced as a result.

***Conclusion and Recommendation***

For all the reasons given above, the undersigned finds that the ALJ's Decision that Landry was no longer under a disability as of June 1, 2004, and had not become disabled again since that date until the date of the Decision on October 25, 2007, failed to comport with relevant legal standards and was not supported by substantial evidence.

Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED** and the case be **REMANDED** to the Commissioner for development of the record regarding the claimant's eye deviation, chest pain and shortness of breath.

Under the provisions of 28 U.S.C. Section 636(b)(1)(c) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on February 28, 2009.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)